IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 24-cv-3066

VIRGINIA CHAU,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER,
PAUL LÓPEZ, in his official and individual capacities, and
R. TODD DAVIDSON, in his official and individual capacities,

    Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Virginia Chau, by and through her attorneys, David Lane and Liana Orshan of KILLMER LANE, LLP, alleges and avers the following:

**INTRODUCTION**

1. For four years, from 2018 through 2022, Ms. Chau worked as a Voting Service Polling Center ("VSPC") Supervisor for Denver Elections Division, a division of the Office of the Clerk and Recorder, an agency of Defendant City and County of Denver ("Denver"). In 2022, after Ms. Chau appeared on a television show called *The Problem with Jon Stewart* and spoke about her personal experience as an Asian-American woman working at a voting center in 2022 America, Defendants Denver, Paul López, who was the elected Clerk and Recorder, and R. Todd Davidson, who was the Director of the Elections Division, terminated Ms. Chau from her position.

2.	On Jon Stewart's show, Ms. Chau raised concerns about threats against elections officials and the lack of training provided to those who work hard to ensure that our elections are safe, fair, and accurate. Solely for that, Defendants terminated Ms. Chau from her position as an election supervisor. Instead of heeding Ms. Chau's call for more resources and training for election officials facing threats to their personal safety, Defendants decided instead to retaliate against one of their best, and most passionate, election workers.

3.	Defendants' termination of Ms. Chau's employment was clearly designed to punish Ms. Chau for her First Amendment protected speech and to silence her on this matter of both local and national importance, in violation of the First Amendment to the United States Constitution.

## JURISDICTION AND VENUE

4.	Ms. Chau brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 for violation of civil rights under the First and Fourteenth Amendments to the United States Constitution.

5.	This Court has subject matter jurisdiction over his matter pursuant to 28 U.S.C. § 1331.

6.	This Court has personal jurisdiction over Defendants, who reside in and conduct business in the District of Colorado.

7.	Venue is proper in the District Court for the District of Colorado pursuant to 28 U.S.C. § 1391 because the unlawful practices alleged herein occurred within the District of Colorado.

## PARTIES

8.	Plaintiff, Virginia Chau, is a United States citizen and resident of Denver, Colorado.

9.	Defendant City and County of Denver ("Denver") is a consolidated city and county in Colorado. Denver Elections Division, which all individual Defendants administer, oversees elections in the City and County of Denver, and is a division of the Office of the Clerk and Recorder, which is an independent agency of Defendant City and County of Denver.

10.	At all times relevant to the subject matter of this Complaint, Defendant Paul López was the elected Clerk and Recorder of the City and County of Denver and a resident and domiciled in the State of Colorado. Defendant López was vested by the City and County of Denver with authority to set and implement all policies and make all operational decisions related to the Elections Division. At all times relevant, Defendant López was acting under color of state law and in his capacity and within the scope of his employment as Clerk and Recorder.

11.	At all times relevant to the subject matter of this Complaint, Defendant R. Todd Davidson was the Director of Denver Elections Division. Defendant Davidson reported directly to Defendant López and was responsible for, among other things, directing the registration, voting, and election activities for City and County of Denver, implementing election-related policies, and supervising and training all staff and personnel within Denver Elections Division. At all times relevant, Defendant Davidson was acting under color of state law and in his capacity and within the scope of his employment as Director of Denver Elections Division.

## STATEMENT OF FACTS

12. Before her termination, Ms. Chau had been a supervisor at VSPCs for four years. Over those four years, she worked on eight separate elections.

13. In her work as a poll supervisor, Ms. Chau oversaw between twenty and thirty election judges during each election.

14. Ms. Chau was an outstanding employee. She was consistently told that she was well-liked by both her group of poll workers ("election judges") and the community she served. She never received any criticism of her work and, on the contrary, was consistently praised for her work.

15. Ms. Chau took time off of her full-time job to work as an election judge. She did so because she believes strongly in supporting democracy, no matter one's political preferences.

16. Ms. Chau was the only female poll supervisor who was of Asian descent. She is also Jewish and always wore a Star of David necklace when working at the VSPC.

17. Ms. Chau is passionate about diversifying election judges so that everyone who shows up to vote will be able to see a face that looks like their own while casting their ballot. She believes that having a more representative cadre of election judges could lead to greater voter turnout from historically underrepresented minorities in the electorate.

18. In Ms. Chau's experience as a poll supervisor, the year 2020 was very difficult for herself and those she supervised. Ms. Chau and her co-workers experienced unprecedented racism from voters. Voters would call her the "China virus" and blame her for COVID. They would also question whether she was a citizen. They would insist on having a "real citizen" or "real American," or after seeing her Star of David, a "Christian," help them. Another election

judge, who was Mexican American, received similarly racist comments. All election judges working with Ms. Chau heard the racist and antisemitic comments some voters were making.

19. Ms. Chau also saw increasing hostility from voters toward all election judges, particularly after former President Trump was spreading the Big Lie. Despite these difficulties, Ms. Chau remained committed to being a poll supervisor because she believed that more than ever, it was important to protect democratic institutions and ensure that election judges were representative of the electorate.

20. After a particularly aggressive voter interacted with her in a very negative manner, Ms. Chau contacted numerous election officials, including the Clerk and Recorder and the Director of Elections, to request additional security (on-site police officers). She explained there were issues with voters electioneering (wearing clothes or gear supporting a specific candidate, which is prohibited when voting), who were reacting particularly hostilely when asked to remove the items. She also reported the racism and antisemitism.

21. Election officials responded to Ms. Chau's request by providing additional security, but otherwise did not address her concerns. She was told "this stuff happens," and it was never brought up again.

22. Prior to an election, election judges received approximately one week of training, but the person who provided the training was unfamiliar with what election judges actually experienced. There was no policy that explained what they should do when encountering aggressive or hostile voters. In fact, Ms. Chau was largely responsible for training her own staff, and she also created training for other VSPCs.

23. Accordingly, Denver failed to provide the necessary training and resources to election judges to keep them safe in an increasingly hostile workplace.

24. Many months before the election in 2022, because of how committed Ms. Chau was to her work, Amber McReynolds, the previous Director of Elections for Denver (Defendant Davidson's predecessor), recommended that Ms. Chau join a group called Issue One. Issue One is a leading cross-partisan political reform group in Washington, D.C. and works to unite Republicans, Democrats, and independents in the movement to fix our broken political system and build an inclusive democracy that works for everyone. Issue One does this by educating the public and working to pass legislation to improve U.S. elections, strengthen ethics and accountability, increase governmental transparency, and reduce the corrosive influence of big money in politics. Ms. Chau, at Ms. McReynolds' insistence, joined Issue One and actively worked with the group on its reform and education efforts.

25. Because of her involvement with Issue One, Ms. Chau was asked to be part of a panel on a television series, *The Problem with Jon Stewart*, about threats to elections and election judges after January 6, 2021 (when the United States Capitol Building was attacked by a mob of Donald Trump supporters two months after he lost the 2020 election). Ms. Chau accepted the invitation and eloquently spoke about her personal experiences as a poll supervisor. At no time did she ever represent that she was speaking on behalf of Denver.[1]

26. On November 5, 2022, a week after Ms. Chau appeared on *The Problem with Jon Stewart*, Defendant Davidson contacted her while she was on site doing election work.

---

[1] *See Poll Worker and Voter Intimidation at The Polls | The Problem with Jon Stewart* (October 29, 2022), YOUTUBE, https://www.youtube.com/watch?v= bQMmRLKPSB8.

Defendant Davidson requested a meeting with Ms. Chau. When Ms. Chau arrived at the in-person meeting with Defendant Davidson, she had no idea what the meeting was about. In addition to Defendant Davidson, a Human Resources employee from Defendant City and County of Denver was also present at the meeting. Defendant López did not attend, but Defendant Davidson made clear that he was speaking for both of them and that he had previously consulted with Defendant López about the meeting's topic.

27.     Defendant Davidson told Ms. Chau that Defendants and other Denver election officials were "disappointed" in Ms. Chau's comments on *The Problem with Jon Stewart*. Defendant Davidson told Ms. Chau that although she was extremely well-liked by all of her co-workers, Defendants were removing Ms. Chau from her position as a VSPC supervisor because of her comments on *The Problem with Jon Stewart*.

28.     Defendant Davidson referenced the previous issues with voters that Ms. Chau had reported, and he said "it was not fair" for her to make the comments that she did on the show. He insisted that she should have first cleared what she was going to say with Defendants—even though she was not representing Denver on the show.

29.     Defendant Davidson offered Ms. Chau a demotion to hotline representative, explicitly because no member of the public would see her in that job and recognize her from the show. Ms. Chau asked Defendant Davidson if she was being removed from public view because, as an Asian female, she might be recognizable to anyone who had seen the show. Defendant Davidson responded that Defendants did not "want people to recognize [her] from the show."

30.     Defendant Davidson also told Ms. Chau that Defendants did not think they would be willing to have her back as a VSPC supervisor in the future.

7

31. Ms. Chau refused Defendants' offered demotion.

32. A few days after her meeting with Defendant Davidson, Ms. Chau contacted Defendant López about her termination. She asked Defendant López to reconsider the decision to terminate her. Defendant López never responded.

33. Since her termination, Defendants have not offered Ms. Chau the opportunity to return to election work.

34. Defendants' termination of Ms. Chau constituted unlawful retaliation against Ms. Chau, who exercised her right to free speech when she spoke out as a private citizen about issues of public concern regarding dangers to and mistreatment of election judges.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – First Amendment Violation
### Free Speech
*Against All Defendants*

35. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

36. At all times relevant to this Complaint, Defendants were acting under the color of state law.

37. Defendants are "persons" under 42 U.S.C. § 1983.

38. Plaintiff was engaged in First Amendment-protected speech as outlined above.

39. Plaintiff's speech was on a matter of public concern and did not violate any law.

40. Plaintiff's speech was not made pursuant to her official duties.

41. Plaintiff's speech was not disruptive, and Defendant Denver's interests did not outweigh Plaintiff's free speech interests.

42. Defendants would not have terminated Plaintiff if she had not engaged in First Amendment-protected conduct.

43. Defendants' termination of Plaintiff was substantially motivated by her First Amendment protected activity.

44. The actions of Defendants can be expected to chill a reasonable person from engaging in activity protected by the First Amendment.

45. Defendants' actions were a content-based and/or viewpoint-based restriction of Plaintiff's expression.

46. Defendants, collectively, failed to intervene to prevent each Defendant from violating Plaintiff's constitutional rights.

47. At the time when Defendants retaliated against Plaintiff for speaking out, Plaintiff had a clearly established constitutional right under the First Amendment to the United States Constitution to engage in the above-described activity. Any reasonable public official knew or should have known of this clearly established right.

48. Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

49. Defendants López and Davidson, as final policymakers for Denver Elections Division, terminated Ms. Chau in retaliation for Ms. Chau's exercise of free speech in violation of Plaintiff's constitutional rights.

50. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

51. Defendants' herein described acts or omissions were the moving force and the

legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered, and other compensatory and special damages.

52. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – First Amendment**
**Retaliation**
*Against All Defendants*

53. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

54. At all times relevant to this Complaint, Defendants were acting under the color of state law.

55. Defendants are "persons" under 42 U.S.C. § 1983.

56. Plaintiff was engaged in First Amendment-protected speech as outlined above.

57. Plaintiff's speech was on a matter of public concern and did not violate any law.

58. Plaintiff's speech was not made pursuant to her official duties.

59. Plaintiff's speech was not disruptive, and Defendant Denver's interests did not outweigh Plaintiff's free speech interests.

60. Defendants would not have terminated Plaintiff if she had not engaged in First Amendment-protected conduct.

61. Defendants' termination of Plaintiff was substantially motivated by her First Amendment protected activity.

62. The actions of Defendants can be expected to chill a reasonable person from engaging in activity protected by the First Amendment.

63. Defendants' actions were a content-based and/or viewpoint-based restriction of Plaintiff's expression.

64. Defendants, collectively, failed to intervene to prevent each Defendant from violating Plaintiff's constitutional rights.

65. At the time when Defendants retaliated against Plaintiff for speaking out, Plaintiff had a clearly established constitutional right under the First Amendment to the United States Constitution to engage in the above-described activity. Any reasonable public official knew or should have known of this clearly established right.

66. Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

67. Defendants López and Davidson, as final policymakers for Denver Elections Division, terminated Ms. Chau in retaliation for Ms. Chau's exercise of free speech in violation of Plaintiff's constitutional rights.

68. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

69. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered, and other compensatory and special damages.

70. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

## PRAYER FOR RELEIF

**WHEREFORE**, Ms. Chau respectfully requests the following relief:

a. All appropriate relief at law and equity;

b. Declaratory relief;

c. Injunctive relief;

d. Actual economic damages as established at trial;

e. Compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and other non-pecuniary losses;

f. Punitive damages for all claims as allowed by law in an amount to be determined at trial;

g. Issuance of an Order mandating appropriate equitable relief, including but not limited to the following:

- reinstatement of Ms. Chau to her previous position as a VSPC supervisor;
- adequate policies and training implemented by Denver to ensure that election workers are safe while working at the polls; and

- a good faith attempt by Denver to recruit and retain diverse election workers;

h. Pre-judgment and post-judgment interest at the highest lawful rate;

i. Attorney's fees and costs; and

j. Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 4th day of November 2024.

KILLMER LANE, LLP

*s/ David A. Lane*
_____
David A. Lane
Liana G. Orshan
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
dlane@killmerlane.com
lorshan@killmerlane.com

ATTORNEYS FOR PLAINTIFF